**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**ANTONIO JACKSON,**

*Plaintiff,*

*v.*

**CLARITY SERVICES, INC.,**

*Defendant.*

Case No:____________________

**JURY TRIAL DEMANDED**

## COMPLAINT AND JURY TRIAL DEMAND

COMES NOW the Plaintiff, Antonio Jackson ("Mr. Jackson"), by and through his attorneys, Seraph Legal, P.A., and complains of the Defendant, Clarity Services, Inc. ("Clarity" or "Defendant"), stating as follows:

## PRELIMINARY STATEMENT

1. This is an action for damages brought by Mr. Jackson against the Defendant for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, et seq. ("FCRA").

## JURISDICTION AND VENUE

2. This Court has federal-question jurisdiction under 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which provides that an action to enforce any liability created under the FCRA may be brought in any appropriate United States district court without regard to the amount in controversy.

3. This Court has personal jurisdiction over the Defendant because the Defendant regularly conducts business in the State of Florida and within this District, and because the acts giving rise to this action occurred within this District.

4. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Mr. Jackson's claims occurred in this District, where Mr. Jackson resides and received his consumer report disclosures at issue.

## PARTIES

### Mr. Jackson

5. Mr. Jackson is a natural person residing in Haines City, Polk County, Florida.

6. Mr. Jackson is a Consumer as defined by the FCRA, 15 U.S.C. § 1681a(c).

### Clarity

7. Clarity is a Delaware corporation, with a principal business address at 475 Anton Boulevard, Costa Mesa, CA 92626.

8. Clarity is registered to conduct business in the State of Florida, where its Registered Agent is CT Corporation System, 1200 South Pine Island Rd., Plantation, FL 33324.

9. Clarity is a Consumer Reporting Agency ("CRA") within the meaning of the FCRA, 15 U.S.C. § 1681a(f), in that it, for monetary fees, dues, or on a

cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and uses various means of interstate commerce for the purpose of preparing or furnishing consumer reports, specifically including mail and telephone communications.

## FACTUAL ALLEGATIONS

### Clarity Mixes Mr. Jackson's Credit File with an Unrelated Person

10. Around December 3, 2021, Clarity began maintaining a credit file on Mr. Jackson. **SEE PLAINTIFF'S EXHIBIT A.**

11. In February 2026, Mr. Jackson sued Clarity over inaccurate information in his file, including impossible driver's license entries, home-address entries that repeated portions of the address, conflicting housing statuses, and false figures for how long he had lived at his home. *Jackson v. Clarity Services, Inc.*, No. 2026CC-002158-A000-BA (Fla. Polk Cnty. Ct. 2026).

12. Through that litigation, Clarity was made aware of Mr. Jackson's true identifying information, including his name and date of birth, and that its file on him carried false identifying information, malformed versions of his home address, and conflicting housing statuses.

13. After that lawsuit, Clarity started incorporating credit information belonging to a separate, unrelated consumer into his file.

14. Clarity falsely associated information apparently belonging to an unrelated individual named "Larry Bates" into Mr. Jackson's credit file.

15. "Larry Bates" bears a surname entirely different from Mr. Jackson's and is associated with a different date of birth and address than Mr. Jackson.

16. Clarity incorporated each of the below into Mr. Jackson's credit file, which information does not belong to Mr. Jackson and likely belongs to "Larry Bates":

- Date of birth in November 1964;
- Home address in Brooksville, Florida;
- Cell phone number ending in 1233;
- Email address beginning "hightim…";
- Net monthly income of $994; and
- Credit inquiry by AmericanFirstFinance-Lease on August 31, 2026.

17. Clarity's file on Mr. Jackson is an example of a mixed file.

18. A mixed file is a credit file that contains information concerning two or more persons rather than the one person about whom it should relate.

19. Clarity caters its consumer reports to subprime lenders, many of whom utilize the personal identifying information maintained by Clarity to verify the identity of credit applicants.

20. Likewise, Clarity incorporates data such as bank accounts and

employment information into risk scores that it often provides to certain end-users, upon request.

21. Thus, Clarity's inclusion of credit information and personally identifying information belonging to another consumer has a severe, negative effect on Mr. Jackson's ability to obtain credit, and exposes his confidential information to third parties who never requested a report on him.

22. Clarity knows through dozens, and likely more, prior lawsuits and disputes that its automated systems often erroneously match tradeline and identifying information to an incorrect consumer's credit file based on minimal commonalities.

23. Despite such knowledge, Clarity has declined to correct its systems.

**<u>Clarity Sells Mr. Jackson's Report Without Permissible Purpose</u>**

24. Clarity, a CRA, has a legal obligation to furnish consumer reports only to those with a permissible purpose to obtain them. 15 U.S.C. § 1681b. Despite that obligation, Clarity sold a consumer report regarding Mr. Jackson in response to a request submitted under the name of "Larry Bates," a request that did not concern Mr. Jackson at all.

25. On August 31, 2026, Clarity sold a consumer report regarding Mr. Jackson to "AmericanFirstFinance-Lease" in response to a rent-to-own application submitted in the name of "Larry Bates" – a request associated with a different date

of birth, address, and other identifying information than Mr. Jackson's.

26. Mr. Jackson's Clarity credit file disclosure confirms the sale through a common tracking number associating the "Larry Bates" application with the report Clarity furnished on Mr. Jackson. **SEE PLAINTIFF'S EXHIBIT A.**

27. Mr. Jackson did not know, and in the exercise of reasonable diligence could not have known, that Clarity had sold this report at the time of this sale.

28. Clarity does not notify a consumer when it sells a consumer report about that consumer, and a report sold in response to a request submitted in another person's name generates no notice to the consumer whatsoever – no adverse-action notice, no communication from the purchasing lender, and nothing else identifying Mr. Jackson as the subject of the report Clarity furnished. The sole means by which a consumer can learn that such a sale occurred is to request and examine his own consumer file disclosure.

29. Mr. Jackson first discovered this sale on or about October 16, 2026, upon obtaining and reviewing the Clarity consumer file disclosure attached hereto, which for the first time revealed – through the common tracking number described above – that Clarity had furnished a report about Mr. Jackson in response to a request concerning "Larry Bates."

30. This action is brought within two years of that discovery and within five years of the sale pleaded above. 15 U.S.C. § 1681p.

31. Clarity had no reason to believe it had a permissible purpose to furnish a report on Mr. Jackson to "AmericanFirstFinance-Lease", which had requested a report concerning an unrelated individual, not Mr. Jackson.

32. Nothing in the disclosure – not the name, the date of birth, the address, the phone number, or the email address – connects Mr. Jackson to "Larry Bates", and nothing could have justified Clarity's decision to treat a request for one as a request for the other.

33. Despite lacking any permissible purpose whatsoever, Clarity still sold a report concerning Mr. Jackson. In doing so, Clarity both disclosed Mr. Jackson's confidential, legally protected information to entities that never requested it and incorporated that individual's information into Mr. Jackson's file as though it were his own.

34. Each unauthorized disclosure of Mr. Jackson's private financial information to a stranger to his transactions was itself a concrete injury to Mr. Jackson, independent of any downstream credit consequence.

**<u>Additional Inaccuracies in Clarity's Reporting Regarding Mr. Jackson</u>**

35. Clarity, a CRA that predominantly serves the needs of online lenders making short-term loans, programs its systems to acquire and report as much information as possible, with little regard to the quality or accuracy of the data.

36. On or about October 26, 2026, Mr. Jackson requested and obtained a

copy of his consumer disclosure from Clarity.

37. Mr. Jackson's review of the disclosure revealed that Clarity was reporting inaccurate, contradictory, and misleading information, as detailed below.

**Clarity Reports Information It Knows to Be False**

38. Notwithstanding that actual knowledge, Clarity has since merged into his file the name, date of birth, home address, cell phone number, email address, and income of another man, Larry Bates, and again reported his home address in malformed form and his housing status as both "OWN" and "RENT," as detailed below.

39. In the paragraphs that follow, street numbers quoted from Clarity's file have been redacted by counsel to protect Mr. Jackson's privacy and are shown as "XXXX." The same redaction has been applied to Mr. Jackson's Clarity consumer disclosure attached as **PLAINTIFF'S EXHIBIT A.** The original disclosure Clarity generated and produced to Mr. Jackson contained the full numbers; Clarity retains a copy of that unredacted disclosure in its own records.

40. A review of Mr. Jackson's Clarity credit file reveals that Clarity failed to implement even the most basic address-standardization or validation procedures.

41. Specifically, Mr. Jackson's credit file contains an entry where Mr.

Jackson's home address is reported as "XXXX WESTGATE DR FL 32835 ORLANDO FL 32835" – a single address record in which the state and ZIP code ("Florida 32835") appear twice: once directly after the street name, in the position the city should occupy, and again after the city, leaving the address components out of sequence and duplicated in a form that no postal database would validate.

42. This is not an ambiguous error. It is a facially impossible address format that any reasonable data-quality check would have flagged and rejected.

43. By failing to utilize any of the numerous existing address validation tools to scrub so obvious an error, Clarity incorporated data into Mr. Jackson's credit file which is misleading, inaccurate, and prejudicial to Mr. Jackson's creditworthiness.

44. Clarity's credit scoring system specifically looks at the number of changes to a consumer's residential history; the more frequently a consumer has new address information reported – even if the address is the same but with a small variation – the worse a consumer will score. By reporting the same address in a malformed format, Clarity artificially inflates the apparent frequency of residential changes, further harming the consumer's risk score.

45. Clarity incorporated data reporting that Mr. Jackson's housing status was "OWN" and "RENT," all within the same credit file.

46. The multiple and contradictory housing statuses Clarity reported for

Mr. Jackson cannot all be simultaneously accurate.

47. Many subprime lenders – the type Clarity services almost exclusively – use housing status to gauge risk. Clarity's reporting of conflicting housing statuses for Mr. Jackson within a single file undermines the reliability of that data point and leads to less favorable lending terms, or outright denials of credit, for Mr. Jackson.

48. On July 22, 2026, for example, Clarity incorporated data reporting that Mr. Jackson's housing status was both "OWN" and "RENT" – mutually exclusive designations that cannot simultaneously be true for the same consumer on the same day.

49. Consequently, Clarity's inclusion of inaccurate and conflicting housing status data had a significant negative impact on Mr. Jackson's ability to obtain new credit.

50. A prime example of Clarity's disregard for accuracy is its current reporting of two different dates of birth for Mr. Jackson, each containing a different month, day, and year. A consumer can only have one date of birth; the additional date Clarity has on file is necessarily false and inaccurate.

51. The harm to Mr. Jackson from this reporting is severe. Date of birth is a core identity field, and Clarity's own proprietary credit scoring system – along with the underwriting models of the subprime lenders to whom Clarity sells

consumer reports – treats inconsistencies in identity data as a primary red flag for fraud and identity theft.

52. A consumer file showing two different dates of birth is, by design, scored as a high-risk applicant whose identity cannot be reliably established. The result is materially lower credit scores, denials of credit, and credit offered only on substantially less favorable terms – consequences Mr. Jackson suffered as a direct result of Clarity's reporting of false birth dates that no reasonable procedure designed to assure maximum possible accuracy of consumer reports would have permitted.

53. The conflict is not a near-miss. The oldest and youngest birth dates Clarity reports for Mr. Jackson reflect a birth year of 1964 and a birth year of 1974 – 10 years apart.

54. A gap of 10 years is far too wide to be the innocent mistyping of a single consumer's birth year, and exposing it requires nothing more than subtracting one birth year from the other. No reasonable procedure designed to assure maximum possible accuracy of consumer reports, as required by 15 U.S.C. § 1681e(b), could have permitted a 10-year spread in a consumer's reported date of birth.

55. This gap is consistent with, and corroborates, the mixing of Mr. Jackson's file with that of another, unrelated consumer described above. Birth

years 10 years apart are what results when the identity data of two different people is merged into a single consumer file.

56. The majority of lenders to whom Clarity sells reports thoroughly examine a consumer's employment history and income data to verify the consumer has a history of reliable employment and stable income.

57. Lenders to whom Clarity sells reports also rely on the identifying information in those reports – such as the consumer's name, date of birth, and address – both to confirm that the report describes the applicant and to assess the risk that an application is fraudulent or that the file has been mismatched to the wrong person. Clarity markets risk scores and fraud-detection products to those lenders.

58. A file carrying inconsistent or facially improbable identifying information tends to present the consumer as a higher fraud or identity risk and impairs the lender's ability to verify the consumer's identity during underwriting.

59. Consequently, Clarity's inclusion of demonstrably false information about Mr. Jackson's address information, consumer identity, date of birth, and housing status had a significant negative impact on Mr. Jackson's ability to obtain new credit with favorable terms.

60. The reports Clarity sold about Mr. Jackson contained false information about, among other things, his address information, consumer

identity, date of birth, and housing status.

61. Clarity first reported the malformed Westgate Drive address and the same-day "OWN" and "RENT" housing statuses described above on July 22, 2026. Since then, it has furnished consumer reports about Mr. Jackson, drawn from the file that carried that information, to at least two third parties: Capital One US Card (account reviews, August 11 and September 8, 2026, through Experian) and AmericanFirstFinance-Lease (August 31, 2026).

62. Clarity first reported Larry Bates's name, date of birth, home address, cell phone number, email address, and income on August 31, 2026. Since then, it has furnished a consumer report about Mr. Jackson, drawn from the file that carried that information, to a third party: Capital One US Card (an account review, September 8, 2026, through Experian).

63. The FCRA is clear in its requirement that Clarity, as a CRA, is required to prepare accurate reports:

> Accuracy of Report. Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates. 15 U.S.C. §1681e(b).

64. Clarity was required to follow reasonable procedures to assure maximum possible accuracy of the information concerning Mr. Jackson.

65. Clarity was thus aware that when it sold reports on Mr. Jackson that, under a best-case scenario, it was selling data and other information it knew it had gathered without regard to accuracy or completeness.

**Clarity Withholds Bank Account Information It Discloses Elsewhere on the Same Document**

66. Clarity's file on Mr. Jackson includes records of his bank accounts – institution name, routing number, and account number – for each account associated with a tradeline Clarity reports about him, as well as for additional accounts Clarity has gathered from his loan applications. On Mr. Jackson's request, the FCRA required Clarity to disclose that information "clearly and accurately." 15 U.S.C. § 1681g(a)(1).

67. In the "Accounts" section of the consumer disclosure Clarity issued to Mr. Jackson on October 16, 2026, Clarity withheld most of the digits of each bank account number, displaying only the last four – e.g., "XXXXXXX2185". Nothing in the FCRA authorizes Clarity to withhold this information when responding to a consumer's file disclosure request.

68. The statute's only truncation authority is for the consumer's Social Security number, on the consumer's request. 15 U.S.C. § 1681g(a)(1)(A).

69. That Clarity has the full account numbers, and is willing to disclose them, is apparent from the "Banking Information" section of the very same document. There, Clarity publishes the full account numbers for the same accounts

– his accounts at "Capital One Bank, Na" ending in "2185" and "Capital One Bank, Na" (checking) ending in "2185" – alongside each institution's full routing number.

70. The last four digits of each Banking Information entry match the last four digits Clarity left visible on the corresponding tradeline. The redacted entries and the unredacted entries refer to the same accounts.

71. Clarity could have presented these accounts in the same way in both sections of the disclosure. It chose not to.

72. The Banking Information section likewise sets out the full account number and routing number for another deposit account in his file – an account at "Fifth Third Bank, National" ending in "5004". There is no comparable redaction of that account anywhere else in the disclosure.

73. There is no version of these facts in which both presentations are reasonable. If the Banking Information format – full account number, full routing number, full institution name – is what the FCRA's "clearly and accurately" disclosure requirement calls for, then Clarity's redaction of the same data in the Accounts section is an unauthorized withholding that prevents Mr. Jackson from verifying the completeness or accuracy of his own file.

74. If, alternatively, Clarity has no consistent procedure for how it presents the same data point on the same document, then Clarity's consumer-

disclosure process is itself unreasonable. Clarity cannot defend both presentations at once.

75. The FCRA requires a consumer reporting agency, upon a consumer's request, to disclose all information in the consumer's file "clearly and accurately." 15 U.S.C. § 1681g(a)(1). A consumer disclosure that displays the same data point both in full and in truncated form on the same document, with no apparent reconciling rule, is neither clear nor accurate.

**Clarity Fails to Meaningfully Disclose Legally Required Information**

76. As set forth above, on or about October 16, 2026, Mr. Jackson requested a copy of his consumer credit disclosure from Clarity.

77. Upon receipt of Mr. Jackson's request, Clarity was required to disclose all information "clearly and accurately" in the credit file, including the identity of each person who obtained a consumer report within the prior year. *See* 15 U.S.C. § 1681g(a)(3)(A)(ii).

78. The FCRA defines "Identification" as "the name of the person or, if applicable, the trade name (written in full) under which such person conducts business." *See* 15 U.S.C. § 1681g(a)(3)(B)(i).

79. Frequently, Clarity fails to fulfill its legal obligations regarding disclosure of this data, often disclosing what can be fairly called incomprehensible information which virtually no one would comprehend.

80. For example, Clarity's disclosure shows an inquiry made on July 22, 2026 which Clarity identified to Mr. Jackson only as "Plain Green/TotalityLMS/Insight." This single inquiry purports to identify three separate end users – "Plain Green," "TotalityLMS," and "Insight" – bundled together as one entry, with no indication which of these entities actually requested the report or what their relationship to one another is.

81. The FCRA requires identification of *each* person who obtained a consumer report – not a slash-delimited list of candidates from which the consumer is left to guess.

82. This pattern is not isolated. Clarity's disclosure contains additional inquiries reported in the same opaque, bundled format.

83. On July 22, 2026, Clarity disclosed an inquiry as "Uplift Loans/Tekambi/Financial Technologies Consulting."

84. Mr. Jackson cannot tell from this entry whether "Uplift Loans" actually obtained his consumer report or whether "Tekambi" or "Financial Technologies Consulting" did.

85. "Tekambi" and "Financial Technologies Consulting" are obscure trade names that no reasonable consumer would recognize. The FCRA requires identification of *each* person who obtained a consumer report, *see* 15 U.S.C. § 1681g(a)(3)(A)(ii); partial identification of one bundled name is not compliance.

86. Whether bundled with a recognizable name or composed entirely of opaque abbreviations, none of these disclosures provided Mr. Jackson with the address, phone number, or other contact information that would allow him to identify which entity actually obtained his consumer report or to follow up with that entity directly.

87. Multiple consumers have previously sued Clarity for failing to disclose the names of entities obtaining credit reports as legally required.

88. The failure of a person to provide accurate and truthful information as required by law creates an injury-in-fact, thus creating standing pursuant to Article III. *See, e.g., Havens Realty Corp. v. Coleman,* 455 U.S. 363 (1982) (holding that alleged injury to a plaintiff's statutorily created right to truthful information was a cognizable injury in and of itself, regardless of whether the plaintiff actually intended to use the information for its primary purpose; therefore "the Art. III requirement of injury in fact [was] satisfied.").

89. Further, the lack of accurate, full disclosure of who had obtained his credit report caused Mr. Jackson great frustration and emotional distress and made him concerned he was the victim of fraud or identity theft.

**Clarity's Lack of Standards Constitute Willful Violations of the FCRA**

90. Clarity operates in stark contrast to its parent company, Experian.

91. While Experian enforces Metro 2 guidelines – industry standards

which contain hundreds of pages of explanation on how to report information, covering almost any conceivable scenario, and which are used by other large CRAs and serve as a lingua franca – Clarity requires no such compliance with Metro 2 guidelines and has no discernible quality-assurance standards.

92. In place of an industry-standard data-quality framework, Clarity's operative "standard" is to ingest and republish whatever data its furnishers transmit, without applying even rudimentary validity checks. Clarity's file on Mr. Jackson is the direct product of that approach: it incorporates and sells information that is not merely unverified, but facially impossible – information that no reasonable data-quality procedure could have permitted to enter a consumer report.

93. The inaccuracies in Mr. Jackson's file are not isolated transcription errors traceable to a single furnisher.

94. They span multiple categories of the data Clarity reports – including address information, consumer identity, date of birth, and housing status – and they share a common signature: each is the kind of error that a single, elementary validity check would have caught before the data was incorporated into Mr. Jackson's file and sold to creditors.

95. Clarity instead operates a system designed to accept and resell that data as if it were genuine.

96. Clarity is not unaware that this is occurring. Clarity has been the subject of repeated FCRA litigation arising from the same categories of inaccuracy described in this complaint – multiple or facially impossible dates of birth on a single consumer's file, opaque or bundled inquiry disclosures, the wholesale incorporation of placeholder or impossible data, and the incorporation of facially improbable or commingled identifying information.

97. Despite this notice, Clarity has continued to operate its systems in materially the same way, without implementing the basic validity checks that would have prevented the errors complained of here.

98. Clarity's decision to forgo the quality controls used by its parent company and by other major consumer reporting agencies, in the face of repeated notice that this decision causes ongoing harm to consumers, constitutes a reckless disregard for the rights of the consumers whose data it sells, including those of Mr. Jackson.

**Damages Suffered by Mr. Jackson**

99. As a direct and proximate result of Clarity's inaccurate reporting, Mr. Jackson applied for credit and was either denied outright or offered credit on materially less favorable terms than he would have received had Clarity's file accurately reflected his true creditworthiness. Lenders and creditors who purchased Clarity's consumer reports made adverse decisions based on the false,

impossible, and internally contradictory information described herein.

100. The practical consequences of Clarity's inaccurate reporting are severe. A consumer whose file carries facially improbable or inconsistent identifying information and an unstable or inconsistent address history – as Clarity reported about Mr. Jackson – is treated as a higher-risk borrower by the subprime lenders that Clarity primarily serves.

101. This directly results in credit denials, higher interest rates, lower loan amounts, and more restrictive repayment terms, causing Mr. Jackson concrete and measurable financial harm.

102. As a result of the Defendant's actions, Mr. Jackson has suffered damages, including wasted time trying to figure out what the information in his Clarity file means and how it got there, lost financial opportunities, denial of credit, less favorable credit terms, lower credit scores, significant emotional distress and aggravation, and damage to his reputation.

103. As of the date of this filing, Clarity continues to include the aforementioned false information in Mr. Jackson's credit file. As such, Mr. Jackson demands that Clarity conduct an investigation upon service of this lawsuit and correct his file within 30 days.

104. Mr. Jackson has hired the undersigned law firm to represent him in this matter and has assigned the firm his right to fees and costs.

**COUNT I**
**CLARITY'S WILLFUL VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681e(b)**

105. Mr. Jackson adopts and incorporates paragraphs 1 through 104 as if fully stated herein.

106. Clarity willfully violated 15 U.S.C. § 1681e(b) when it failed to follow reasonable procedures to assure maximum possible accuracy of the consumer reports sold regarding Mr. Jackson, as Clarity sold consumer reports containing erroneous information about his address information, consumer identity, date of birth, housing status, and more.

107. Clarity acted with actual knowledge of the information's falsity: Mr. Jackson had previously brought suit against Clarity over the accuracy of this very Clarity file, putting Clarity on notice of Mr. Jackson's true identifying information, including his name and date of birth, and that its file on him carried false identifying information, malformed versions of his home address, and conflicting housing statuses.

108. Clarity nonetheless merged into his file the name, date of birth, home address, cell phone number, email address, and income of another man, Larry Bates, and again reported his home address in malformed form and his housing status as both "OWN" and "RENT" — reporting information it knew to be false about Mr. Jackson.

109. Clarity has been sued on numerous occasions for very similar

situations and knows that it frequently sells reports with erroneous information about consumers.

110. Clarity's conduct was thus willful or done with a reckless disregard for Mr. Jackson's rights under the FCRA.

111. As a result of its conduct, Clarity is liable to Mr. Jackson for the greater of Mr. Jackson's actual damages or statutory damages of up to $1,000 for each occurrence, punitive damages, reasonable attorneys' fees, and costs, per 15 U.S.C. § 1681n.

**WHEREFORE,** Mr. Jackson respectfully requests this Honorable Court enter judgment against Clarity for:

a. the greater of Mr. Jackson's actual damages and statutory damages of $1,000 per incident pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b. punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c. reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3); and

d. such other relief that this Court deems just and proper.

**COUNT II**

**<u>CLARITY'S NEGLIGENT VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681e(b)</u>**

**(Pled in the Alternative to Count I)**

112. Mr. Jackson adopts and incorporates paragraphs 1 through 104 as if fully stated herein, and pleads this count strictly in the alternative.

113. Clarity owed Mr. Jackson a legal duty to utilize reasonable

procedures to assure the maximum possible accuracy of its consumer reports regarding Mr. Jackson.

114. Clarity violated 15 U.S.C. § 1681e(b) when it sold consumer reports containing erroneous information about Mr. Jackson's address information, consumer identity, date of birth, housing status, and more.

115. Clarity's breach amounts to a negligent violation of 15 U.S.C. § 1681e(b), and Mr. Jackson is entitled to his actual damages, attorneys' fees, and costs, pursuant to 15 U.S.C. § 1681o.

**WHEREFORE,** Mr. Jackson respectfully requests this Honorable Court enter judgment against Clarity for:

a. actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b. reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681o(a)(2); and

c. such other relief that this Court deems just and proper.

**COUNT III**
**<u>CLARITY'S WILLFUL VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681g(a)(1)</u>**

116. Mr. Jackson adopts and incorporates paragraphs 1 through 104 as if fully stated herein.

117. Clarity violated 15 U.S.C. § 1681g(a)(1) when it failed to clearly and accurately disclose all the information it had in its file by providing Mr. Jackson with a redacted version of his Consumer Disclosure, including by redacting his

bank account numbers in the Accounts section of the disclosure while simultaneously publishing those same bank account numbers in full – alongside the corresponding routing numbers and institution names – in the Banking Information section of the very same document.

118. Clarity has been notified through litigation that its disclosures to consumers fail to properly disclose this information.

119. Clarity's conduct was thus willful and intentional, or, alternatively, was performed with reckless disregard for its duties under the FCRA.

120. As a result of its conduct, Clarity is liable to Mr. Jackson for the greater of Mr. Jackson's actual damages or statutory damages of up to $1,000 for each occurrence, punitive damages, reasonable attorneys' fees, and costs, per 15 U.S.C. § 1681n.

**WHEREFORE,** Mr. Jackson respectfully requests this Honorable Court enter judgment against Clarity for:

a. the greater of Mr. Jackson's actual damages and statutory damages of $1,000 per incident pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b. punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c. reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3); and

d. such other relief that this Court deems just and proper.

**COUNT IV**
**CLARITY'S NEGLIGENT VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681g(a)(1)**
**(Pled in the Alternative to Count III)**

121. Mr. Jackson adopts and incorporates paragraphs 1 through 104 as if fully stated herein, and pleads this count strictly in the alternative.

122. Clarity owed Mr. Jackson a legal duty to accurately disclose all the information in his credit file upon his request.

123. Clarity breached this duty when it provided Mr. Jackson with a redacted version of his Consumer Disclosure and, in particular, when it redacted his bank account numbers in one section of that disclosure while publishing those same bank account numbers in full in another section of the same document.

124. Clarity's breach amounts to a negligent violation of 15 U.S.C. § 1681g(a)(1), and Mr. Jackson is entitled to his actual damages, attorneys' fees, and costs pursuant to 15 U.S.C. § 1681o.

**WHEREFORE,** Mr. Jackson respectfully requests this Honorable Court enter judgment against Clarity for:

a. actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b. reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681o(a)(2); and

c. such other relief that this Court deems just and proper.

**COUNT V**

**CLARITY'S WILLFUL VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681g(a)(3)(A)(ii)**

125. Mr. Jackson adopts and incorporates paragraphs 1 through 104 as if fully stated herein.

126. Clarity violated 15 U.S.C. § 1681g(a)(3)(A)(ii) when it failed to identify each person, including the end-user, that procured Mr. Jackson's consumer report during the one-year period preceding the date upon which he made the request.

127. Clarity is aware that its consumer disclosures fail to properly identify end-users via multiple consumer lawsuits.

128. Clarity's conduct was willful, intentional, and exhibited a reckless disregard for its duties to provide clear and accurate disclosures.

129. As a consequence, Clarity is liable to Mr. Jackson for the greater of Mr. Jackson's actual damages or statutory damages of up to $1,000 for each occurrence, punitive damages, and reasonable attorneys' fees and costs, pursuant to 15 U.S.C. § 1681n.

**WHEREFORE,** Mr. Jackson respectfully requests this Honorable Court enter judgment against Clarity for:

a. the greater of Mr. Jackson's actual damages and statutory damages of $1,000 per incident pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b. punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c. reasonable costs and attorneys' fees pursuant to 15 U.S.C. §

1681n(a)(3); and

d. such other relief that this Court deems just and proper.

**COUNT VI**
**CLARITY'S NEGLIGENT VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681g(a)(3)(A)(ii)**
**(Pled in the Alternative to Count V)**

130. Mr. Jackson adopts and incorporates paragraphs 1 through 104 as if fully stated herein, and pleads this count strictly in the alternative.

131. Clarity owed Mr. Jackson a legal duty to disclose the identity of each user that obtained his consumer report within one year of Mr. Jackson's request.

132. Clarity breached this duty when it failed to identify each person, including end-users, who procured Mr. Jackson's consumer report.

133. Clarity's breach amounts to a negligent violation of 15 U.S.C. § 1681g(a)(3)(A)(ii), and Mr. Jackson is entitled to his actual damages, attorneys' fees, and costs pursuant to 15 U.S.C. § 1681o.

**WHEREFORE,** Mr. Jackson respectfully requests this Honorable Court enter judgment against Clarity for:

a. actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b. reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681o(a)(2); and

c. such other relief that this Court deems just and proper.

**COUNT VII**

**WILLFUL VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681b(a)(3)**

134. Mr. Jackson adopts and incorporates paragraphs 1 through 104 as if fully stated herein.

135. Clarity violated 15 U.S.C. § 1681b(a)(3) when it furnished a consumer report regarding Mr. Jackson to AmericanFirstFinance-Lease in response to a credit application submitted in the name of "Larry Bates" – an application that concerned a different, unrelated individual and not Mr. Jackson.

136. Clarity had no reason to believe it had a permissible purpose to furnish reports regarding Mr. Jackson.

137. Clarity knows, through complaints from other consumers, that its automated systems often provide data about unrelated consumers in response to requests for reports by lenders.

138. Clarity's conduct was willful, intentional, and/or exhibited a reckless disregard for its duties under the FCRA.

**WHEREFORE,** Mr. Jackson respectfully requests this Honorable Court enter judgment against Clarity for:

a. the greater of Mr. Jackson's actual damages and statutory damages of $1,000 per incident pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b. punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c. reasonable costs and attorneys' fees pursuant to 15 U.S.C. §

1681n(a)(3); and

d. such other relief that this Court deems just and proper.

**COUNT VIII**
**NEGLIGENT VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681b(a)(3)**
**(Pled in the Alternative to Count VII)**

139. Mr. Jackson adopts and incorporates paragraphs 1 through 104 as if fully stated herein, and pleads this count strictly in the alternative.

140. Clarity had a legal duty to Mr. Jackson to only sell consumer reports to those persons with a permissible purpose to obtain the reports.

141. Clarity breached this duty when it furnished a consumer report regarding Mr. Jackson to AmericanFirstFinance-Lease in response to a request concerning a different, unrelated individual, and thus without a permissible purpose as to Mr. Jackson.

142. Clarity's breach entitles Mr. Jackson to his actual damages, reasonable attorneys' fees, and costs.

**WHEREFORE,** Mr. Jackson respectfully requests this Honorable Court enter judgment against Clarity for:

a. actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b. reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681o(a)(2); and

c. such other relief that this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all issues so triable.

Respectfully submitted on October 26, 2026, by:

**SERAPH LEGAL, P. A.**

***/s/ Christian E. Cok***
Christian E. Cok, Esq.
Florida Bar No.: 1032167
CCok@SeraphLegal.com
Service@seraphlegal.com
3505 E. Frontage Rd., Suite 145
Tampa, FL 33607
Tel: 813-567-1230
Fax: 855-500-0705
*Attorneys for Plaintiff*

**ATTACHED EXHIBIT LIST**
**Exhibit A:** Mr. Jackson's Clarity Consumer Disclosure, October 26, 2026 – Excerpts